**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

v.

**William Goddrell BARROW, Defendant–Appellee.**

**No. 06SA56.**

Supreme Court of Colorado, En Banc.

June 26, 2006.

Larry R. Abrahamson, District Attorney, 8th Judicial District, C. Michelle Brinegar, Senior Deputy District Attorney, Ft. Collins, Colorado, Attorneys for Plaintiff–Appellant.

David S. Kaplan, Colorado State Public Defender, Kathryn Hay, Deputy State Public Defender, Denver, Colorado, Attorneys for Defendant–Appellee.

Chief Justice MULLARKEY delivered the opinion of the Court.

## I. Introduction

In this interlocutory appeal under C.A.R. 4.1, we review the trial court's ruling that the appellee, a juvenile criminal defendant, was not properly advised of his right to have a parent present during custodial interrogation pursuant to section 19–2–511, C.R.S. (2005). The trial court found that Colorado law required the police to acquire an express waiver from a juvenile prior to conducting an interrogation of the juvenile without a parent present. The court found that such a waiver was not obtained in this case and ordered all statements obtained during the interrogation process suppressed. We affirm the trial court's order.

## II. Facts and Prior Proceedings

The juvenile defendant, William Barrow, was charged as an adult by direct filing for charges including second degree assault with a deadly weapon, second degree burglary of a dwelling, and attempted unlawful sexual conduct in connection with an assault on a female victim during a burglary of her residence. Barrow was also charged with nine counts of second degree burglary of a dwelling involving other victims, crimes he admitted while being interrogated for the burglary and sexual assault.

After Barrow was located, arrested, and taken to the police station, James Byrne, an officer with the Fort Collins Police Department, notified Jacqueline Barrow that her son had been taken into custody and she arrived at the station shortly thereafter. At the station, Ms. Barrow had the opportunity to speak with the defendant, first with Officer Byrne in the room, and then privately. After speaking with her son in private, Ms. Barrow reviewed her son's rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), with Officer Byrne who presented her with an "Advisement of Rights" form. The form reprinted the *Miranda* advisement and included a section allowing the parent to give the police permission to speak to a juvenile child outside the parent's presence, which Ms. Barrow signed.[1] After Ms. Barrow signed the form, Officer Byrne gave her a ride home.

---

1. Above Jacqueline Barrow's signature the form reads: "The above subject is a Juvenile [sic]. I

Give [sic] the Detective [sic] permission to speak

When he returned to the station, Officer Byrne advised William Barrow of his *Miranda* rights and presented him with the "Advisement of Rights" form which his mother had signed. Barrow indicated through check marks on the form that he understood his rights under *Miranda* and that, having those rights in mind, he was willing to talk to the police. Nowhere on the form did it state that a juvenile defendant has the right to have a parent present during police interrogation. Barrow signed the form over the "Subject's Signature" line. After Barrow signed the form, Office Byrne began a videotaped interrogation which resulted in various incriminating statements.

At no time prior to or during the interrogation did Officer Byrne advise Barrow that he had the right to have a parent or guardian present during police questioning. Following a suppression hearing, the trial court ruled that the officer failed to obtain an express waiver from the juvenile defendant of his right to have a parent present during interrogation, necessitating suppression of Barrow's statements from introduction into evidence in the People's case-in-chief. In response to the court's order, the People brought this appeal.

### III. Analysis

 We will not disturb the trial court's findings of fact when ruling on a suppression motion if those findings have competent factual support in the record. *See, e.g., People v. Howard,* 92 P.3d 445, 448 (Colo.2004). We review the trial court's application of the controlling legal standard to its factual findings de novo. *Id.*

 In this case, the trial court based its findings on the testimony of both Officer Byrne and Ms. Barrow at the suppression hearing and portions of the videotape recording of Byrne's interrogation of the defendant. Jacqueline Barrow claimed at the hearing that due to the medication she was taking at the time she signed the form, she did not realize she was consenting to have her son interviewed outside her presence. The trial court rejected her testimony. Rather, it re-

lied on Officer Byrne's testimony concerning Ms. Barrow's conduct and understanding during the advisement. The court found, based on the officer's testimony, that Ms. Barrow had been properly advised of her son's right to have her present and that she had waived that right. The court also found, based on Officer Byrne's testimony and the court's review of the videotape, that the officer had not obtained the defendant's waiver of his mother's presence. The determination of the witnesses' credibility was within the trial court's discretion. Our review of the record shows it supports the trial court's findings.

Consequently, we face only the legal question of whether the totality of the circumstances of the officer's interaction with the juvenile defendant constituted a proper advisement and waiver of the defendant's right to have a parent or guardian present during interrogation. § 19–2–511, C.R.S. (2005). We hold that they did not.

As relevant to this case, section 19–2–511 provides:

(1) No statements or admissions of a juvenile made as a result of the custodial interrogation of such juvenile ... shall be admissible in evidence against such juvenile unless a parent, guardian, or legal or physical custodian of the juvenile was present at such interrogation....

...

(5) Notwithstanding the provisions of subsection (1) of this section, the juvenile and his or her parent, guardian, or legal or physical custodian may expressly waive the requirement that the parent, guardian, or legal or physical custodian be present during interrogation of the juvenile. This express waiver shall be in writing and shall be obtained only after full advisement of the juvenile and his or her parent, guardian, or legal or physical custodian of the juvenile's rights prior to the taking of the custodial statement....

§ 19–2–511.

We have previously examined this statutory section in detail. *Grant v. People,* 48 P.3d 543 (Colo.2002). In that case, the juvenile defendant verbally agreed to an interview outside his parents' presence. *Id.* at 546. A

to my child/step-child, without me being present in the interview."

written waiver form was signed by the defendant's mother and initialed by his stepfather, but was not signed by the defendant himself. *Id.* at 547. The defendant argued that the waiver did not satisfy section 19–2–511(5) because the police failed to obtain his signature on the written waiver form. *Id.* We rejected this argument, finding that "although it would clearly be preferable, an express, written waiver need not necessarily be signed in order to satisfy subsection (5) of section 19–2–511 so long as the circumstances surrounding that waiver clearly demonstrate that the child and parent agreed to waive their statutory rights." *Id.* at 549.

The People argue here that the totality of the circumstances show that the juvenile defendant issued a reliable waiver. They contend that the defendant's "street smarts" and his prior criminal record reflected in the fact that he was on probation for previous burglaries show that he was already aware of his rights. They further argue that the fact that the defendant had the opportunity to consult with his mother before the interrogation and the fact that Officer Byrne showed him the "Advisement of Rights" form signed by his mother prove that Barrow was advised of and waived his right to have a parent present during questioning. The People assert that these relevant circumstances appropriately support a finding of a waiver, similar to the waiver in *Grant*. *See id.* at 550.

We are unpersuaded by the People's argument. In *Grant,* we emphasized that the General Assembly intended section 19–2–511 "to ensure that the juvenile and parent were fully aware of the scope and content of the rights they were waiving and to impress upon them the importance of those rights." *Id.* at 549. The circumstances in *Grant* which justified upholding the trial court's finding of a waiver, despite the absence of the juvenile's signature on the written waiver form, included that the defendant had voluntarily requested to speak with police outside the presence of his parents after a proper advisement of his right to have his parents present. *Id.* at 550. The defendant verbally agreed to an interview outside his parents' presence when a police officer showed him a form entitled "Juvenile Interview Waiver" which had been signed by his mother and stepfather. *Id.* at 546. From this and other

evidence, there was "no factual question about whether Grant sought to waive [his] statutory right, or whether he disputed the contents of the waiver in any respect." *Id.* at 550.

In this case, by contrast, Barrow was not advised of his right to have his mother present during interrogation. He was shown a form signed by his mother indicating that she granted her permission for the interview to proceed outside her presence. However, the form did not indicate that Barrow had the right to insist his mother be present before the interrogation could proceed. Officer Byrne did not verbally inform Barrow of his right to have his mother present and unlike the defendant in *Grant,* Barrow did not verbally express that he wanted to speak to the officer outside his mother's presence. Consequently, the totality of the circumstances show that Barrow was not fully advised and did not expressly waive his right to have a parent present as provided by section 19–2–511.

## IV. Conclusion

For the reasons stated above, the trial court's suppression order is affirmed and the case is remanded for proceedings consistent with this opinion.